ANGEL PALACIOS, Plaintiff and Appellant, v. LUIS ARZUAGA, Defendant and Appellee.

No. 4168. Argued June 17, 1927.—Decided July 26, 1927.

*Enrique Campillo* for the appellant. *José Martínez Dávila* and *A. Barceló Jr.* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an action for the return of a cash pledge of $500 and also for the recovery of $792 as damages, the plaintiff alleging that the defendant breached a certain contract which bound him to deliver all milk produced in his dairy for the period of one year.

The opinion of the trial court in which the evidence of both parties is discussed and analyzed and a statement is given of the grounds for the dismissal of the complaint reads as follows:

"This is an action brought by Ángel Palacios against Luis Arzuaga setting up two causes of action. It is prayed (1) that the defendant be adjudged to return to the plaintiff the sum of $500, the amount of a cash pledge, and (2) that the defendant pay to the plaintiff the sum of $792 as damages.

"About the 20th of August, 1924, the plaintiff and the defendant entered into a contract for the purchase and sale of milk whereby the plaintiff bound himself to buy all of the milk produced in the dairy of the defendant. The contract contains the following clauses:

" '1. Ángel Palacios binds himself to take all of the milk produced in the dairy of Luis Arzuaga which shall be delivered on the Río Piedras–San Juan road at the crossing of that road with the street leading to the dairy.

" '2. This contract shall be for one year from the 1st of September of the current year, and therefore it shall expire on the same day of the same month of the year 1925.

" '3. The prices per quart of milk to be paid by Palacios to Arzuaga shall be as follows: The months from September to January at the rate of fourteen cents. From January 1 to May 1, or for four months, at the rate of sixteen cents; and the following four months, that is, from May 1 to September 1, at the rate of twelve cents, so that each four months the prices shall vary as agreed, that is, the first four months at fourteen cents, the next four at sixteen cents and the last four at twelve cents.

" '4. Payment for the milk shall be made weekly at the residence of Arzuaga.

" '5. To secure the performance of this contract in all of its parts Palacios delivers to Arzuaga the sum of $500 which shall be forfeited to Arzuaga in case of any breach by Palacios of the conditions of this contract, and Arzuaga binds himself to return that sum to Palacios at the termination of the contract if all of the obligations established therein have been complied with.

" '6. Arzuaga shall not be liable for losses in the quantity of milk after it has been delivered nor for damage to it totally or partially.'

"It is alleged in the complaint and admitted in the answer that in accordance with the terms of the contract as transcribed the defendant delivered all of the milk from his dairy until about the 25th of May, 1925, when he left off sending and delivering it absolutely, the defendant alleging that he was compelled to act in that way because the plaintiff had failed to pay for the milk delivered in accordance with the terms of the contract, causing losses and inconvenience in his business.

"It is also alleged in the complaint that it was likewise agreed from the outset that the plaintiff would liquidate and settle weekly with the defendant for the milk delivered daily, the defendant having approved each and every liquidation submitted. The defendant denies that allegation and in opposition states in his answer that the manner of payment stipulated had not been modified in any way.

"It appears from the evidence that each week, that is, on Saturday of each week, the plaintiff prepared a liquidation of the amounts of milk received daily and made out a check in favor of the defendant who usually sent his collector Bonacio Casellas Santana to get it at the milk-stand of the plaintiff at No. 20 San Sebastián Street, San Juan. It also appears from the evidence that on three

different occasions, that is, December 3, 1924, and January 2 and 16, 1925, the plaintiff lent to the defendant the sums of $400, $500 and $300, respectively, to be discounted, as was done, from subsequent liquidations. It is alleged by the plaintiff that at the time of making those loans it was agreed between the parties that a delay by the plaintiff of a few days in the weekly settlement of the milk received from the defendant would not affect the contract. The defendant denies this and alleges in opposition that he always collected from the plaintiff for the milk supplied weekly in accordance with the contract. The testimony of the plaintiff and of the defendant on this point is conflicting and the court finds, after weighing the testimony, that although several weekly payments had been delayed, as is shown by the dates when the defendant seems to have cashed the checks 5 or 6 days after their issuance, there was no modification of the contract as to the mode and form of payment.

"On May 13, 1925, the defendant appeared before notary José Martínez Dávila and stated that the plaintiff had failed to pay him for the milk corresponding to the week ended May 8, 1925, and requested the notary to demand of the plaintiff payment thereof and to warn him that in case he failed to make payment immediately he would avail himself of the right given him by clause 5 of the aforesaid contract, namely, the forfeiture to the defendant of the $500 left with him by the plaintiff as a cash pledge for the performance of the terms of the contract. Notary Martínez Dávila having demanded payment of the plaintiff as requested, the said plaintiff answered that 'he was trying to find a way to pay him and that anyhow he would pay within a week.' Subsequently the defendant received from the plaintiff a check dated May 8, 1925, for $119.04, the amount of the liquidation corresponding to the week from the 2nd to the 8th of said month, which the defendant cashed on May 18, 1925. Later the defendant received also another check for $133.32 dated May 15, 1925, of the liquidation corresponding to the week from May 9 to 15, 1925, which the defendant cashed on May 23, 1925. And on May 26, 1925, the plaintiff sent to the defendant a check for the milk delivered during the week between May 16 and 22, 1925, which check was dated May 22, 1925. On May 29, 1925, appears a liquidation for $32.76 corresponding to the 23rd, 24th and 25th of May, 1925, the last week that the plaintiff supplied the defendant with milk, the plaintiff having settled with the defendant for milk supplied him since the contract went into effect.

"Clause 4 of the contract provides expressly 'That payment shall

be made weekly at the residence of Arzuaga.' This clause was not complied with by the plaintiff. Evidently when on May 13, 1925, demand was made on the plaintiff for payment for the milk delivered to him during the week between the 2nd and the 8th of May, 1925, he did not make that payment, notwithstanding the statement in his testimony that he had made out the check as usual but that he had not deposited funds in the bank. That check, dated May 8, 1925, was delivered after May 13, 1925, and cashed by the defendant on May 18, 1925.

"In order that the plaintiff may recover damages for failure on the part of the defendant to supply him with milk as contracted it becomes necessary for him to show that he has complied with each and every condition of the agreement, and as he has not done so, his complaint can not be sustained in that respect.

"On the other hand the plaintiff failed to show damages because the defendant's ceasing to supply him with milk from May 26, 1925, as his testimony on that point in regard to anticipated profits and compensation given to Jesús Guzmán was not sufficiently satisfactory for the court to base thereon a judgment against the defendant.

"Clause 5 of the contract stipulates as follows:

" '5. To secure the performance of this contract in all of its parts Palacios delivers to Arzuaga the sum of $500 which shall be forfeited to Arzuaga in case of failure on the part of Palacios to perform the terms of this contract and Arzuaga binds himself to return it to him at the termination thereof in case of fulfillment of all of the obligations established therein.'

"It has been shown by the evidence that the plaintiff delivered to the defendant a check for $500 dated August 14, 1924, which was cashed by the defendant who retains the amount as security in accordance with the terms of the contract. In a letter of June 3, 1925, the plaintiff demanded of the defendant the return of that sum, without prejudice to any compensation to which he might be entitled, and the defendant answered on the following day that he was retaining that sum as part compensation for the damages caused him by the breach of contract on the part of the plaintiff.

"The defendant contends that when it was stipulated in the contract that the sum delivered *should be forfeited to the defendant in case of failure on the part of the plaintiff* to perform the terms of the contract a penalty was established, that it is a penal clause, and that he is not bound to return the sum, for it had been shown that the plaintiff failed to perform the contract by not paying for

the milk in the form and manner agreed upon, that is, making weekly payments at the residence of the defendant.

"The defendant is right, for though the plaintiff paid all the sums due on account of milk supplied to him by the defendant, the payments were not made in the form specified in the contract. He failed to fulfill one of the stipulations of the contract.

"In an obligation with a penal clause the penalty substitutes indemnity for damages and the payment of interest in case of non-performance, should there be no agreement to the contrary. Section 1120 of the Civil Code. For *any breach of the contract* the defendant was authorized to keep or make his the sum delivered to him by the plaintiff, and as that was the agreement between the parties clearly established, in the absence of fraud, deceit or illegality the court can not take the plaintiff out of the situation in which he placed himself when entering into the contract, nor can it order the return of the sum delivered. The contract should govern and whether or not it was to the advantage of the parties to bind themselves in that way is of no importance whatever, if it appears that the intention was clear. *Pueyo* v. *Real Hermanos*, 18 P.R.R. 831."

It seems sufficient to add that the evidence of the defendant tended to show that the delay on the part of the plaintiff in his payment for the milk delivered during each week was rather an excuse to give the defendant a pretext for refusing to deliver the milk and rescind the contract. And that was the intention of the plaintiff because he had entered into another contract with Rubert Iturregui & Co. for the purchase and sale of milk at a lower price than that paid to the defendant. Under such circumstances there is no reason for modifying the amount of $500 which the plaintiff delivered to the defendant, authorizing him to retain that sum in case of failure on the part of the plaintiff to fulfill the terms of the contract.

Besides, it has not been shown that there was manifest error, passion, or partiality on the part of the trial judge in weighing the evidence, and the judgment appealed from must be affirmed.